Honorable _____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBIN KROHN, individually and on behalf of all others similarly situated,<br><br>           Plaintiff,<br><br>v.<br><br>V PACIFIC MARKET INTERNATIONAL, LLC, a corporation,<br><br>           Defendant. | Case No.<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

## **<u>INTRODUCTION</u>**

1.     Plaintiff Robin Krohn, individually and on behalf of all others similarly situated, by and through their undersigned attorneys, brings this Class Action Complaint against Defendant Pacific Market International, LLC ("Defendant" or "PMI") for their negligent and/or intentional practice of misrepresenting and failing to fully disclose the presence of lead in Defendant's popular Stanley cups sold throughout the United States, including this District. Plaintiff seeks both injunctive and monetary relief on behalf of the proposed class. Plaintiff alleges the following based upon personal knowledge as well as investigation by their counsel and, as to all other matters, upon information and belief. Plaintiff believes that a reasonable opportunity for discovery will reveal substantial evidentiary support for the allegations set forth herein.

CLASS ACTION COMPLAINT - 1

1

**JURISDICTION AND VENUE**

2        2.      This Court has original jurisdiction over all causes of action asserted herein under

3 the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds

4 $5,000,000 exclusive of interest and costs and more than two-thirds of the Class reside in states

5 other than the states in which Defendants are citizens and in which this case is filed, and therefore

6 any exemptions to jurisdiction under 28 U.S.C. §1332(d) do not apply.

7        3.      Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Plaintiff has

8 suffered injury as a result of Defendant's acts in this district, many of the acts and transactions

9 giving rise to this action occurred in this District, Defendant conducts substantial business in this

10 district, Defendant has intentionally availed itself of the laws and markets of this district, and

11 Defendant is subject to personal jurisdiction in this district.

12

**PARTIES**

13        4.      Plaintiff Robin Krohn is a resident of El Cajon, California, and purchased one of

14 Defendant's Stanley cups ("Stanley cup" or "Stanley cups") for herself from a Dick's Clothing &

15 Sporting Store in EL Cajon, CA on or around December 16, 2022. Based on Defendant's material

16 omissions, Plaintiff Krohn was unaware that the Stanley cup contained any lead, and would not

17 have purchased it or she would not have paid as much for it if that information was fully disclosed.

18 Plaintiff was injured by paying a substantial premium for the Stanley cup whose value was less

19 than what she paid for based on the presence of the alleged lead. Plaintiff would be willing to

20 purchase a Stanley cup in the future if she could be certain that they do not contain (of have a

21 material risk of containing) lead.

22        5.      As the result of Defendant's negligent and/or knowingly deceptive conduct as

23 alleged herein, Plaintiff was injured when she paid the purchase price or a price premium for the

24 Stanley cup. Plaintiff would not have paid this money had she known that the Stanley cup

25 contained any level of lead.

26

CLASS ACTION COMPLAINT - 2

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

6.      Defendant PMI is a Washington limited liability company with its principal place of business located at 2401 Elliot Avenue Fl. 4, Seattle, Washington 98121.

7.      Defendant manufactures, distributes, markets, advertises, and sells the Stanley cup throughout the United States, including in this District, during the Class Period (defined below), both directly to consumers and through intermediaries. Defendant intended to, and did, substantially affect business and commerce within California.

**FACTUAL ALLEGATIONS**

8.      PMI has existed for over 110 years and markets itself as "there for all your adventures so you can make the most of your world (whether you're scaling a mountain or climbing an elm in your own backyard)."[1]

9.      PMI's "Stanley products are created and manufactured to last a lifetime" so much so that PMI has a "Built for Life™ lifetime warranty."[2]

10.      PMI touts itself to provide "values-led manufacturing"[3] and advertises its products as "your trusted companion[.]"[4]

11.      PMI has marketed its products as safe, practical, and "made with BPA-free 90% recycled 18/8 stainless steel."[5]

12.      For example, The Quencher H2.0 Flowstate Tumbler is marketed as "Your trusted companion whether you're hitting the road or your morning spin class."[6]

13.      In 2019, the Stanley Adventure Quencher Travel Tumbler was selling poorly, so PMI partnered with the Buy Guide, an affiliate-marketing site based in Utah, to launch a marketing

---

[1] Who We Are, https://www.stanley1913.com/pages/about-stanley (last visited Feb. 6, 2024).

[2] Sustainability at Stanley, https://www.stanley1913.com/pages/sustainability (last visited Feb. 6, 2024).

[3] Sustainability at Stanley, https://www.stanley1913.com/pages/sustainability

[4] *See e.g.*, THE QUENCHER H2.0 FLOWSTATE™ TUMBLER | 40 OZ, Details & Specifications, https://www.stanley1913.com/products/adventure-quencher-travel-tumbler-40-oz?variant=44559859613823 (last visited Feb. 6, 2024).

[5] *Id*.

[6] *Id*.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

campaign. Buy Guide coached PMI to launch "an affiliate-marketing system through which fans could make money by driving sales."[7] This resulted in a substantial sales increase, with the Stanley brand leaping from $70 million in annual sales to over $750 million in 2023.

14.     The success of the Stanley Adventure Quencher Travel Tumbler led to the launch and subsequent popularity of other Stanley cups designed with the same insulation system and sleek aesthetics.

15.     In January 2024, in response to a number of reports alleging the presence of lead in PMI products, PMI admitted that the manufacturing process utilizes a sealing material that contains lead.[8] Furthermore, PMI admitted that the base cap of a product may "come[] off due to ordinary use and expose[] this seal"[9], thus exposing the consumer to lead.

16.     PMI failed to disclose that, if damaged, the Stanley cup could expose consumers to lead. Thus, PMI knowingly misled consumers by failing to disclose that fact that a reasonable consumer would want to know before purchasing.

17.     At all relevant times herein, Defendant continued to promote the Stanley cups as safe to use during strenuous activities – such as hiking, climbing, and skateboarding – even though such activities could increase the risk of a Stanley cup being dropped and/or damaged.

18.     In doing so, Defendant concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with ingesting lead.

19.     Yet, PMI advertises and markets its Stanley cups to consumers who enjoy active lifestyles, and such lifestyles increase the risk of damaging the product and exposing consumers to the lead used to manufacture that very product.

20.     The presence of lead at any level would be material to a reasonable consumer due to the inherent and known risks of consumption and exposure.

---

[7] Kyle Chayka, *How the Stanley Cup Went Viral*, The New Yorker (January 30, 2024).
[8] *Do Stanley products contain lead?*, Stanley 1913,
https://support.stanley1913.com/en/support/solutions/articles/69000850923-do-stanley-products-contain-lead- (last visited Feb. 6, 2024).
[9] *Id.*

CLASS ACTION COMPLAINT - 4

21.     PMI's explanation of lead use shows that PMI deliberately used lead in its cups' vacuum seals while knowing that Stanley cups could be damaged even through ordinary use.

22.     PMI knowingly sells the Stanley cups to unsuspecting consumers. More specifically, it advertises and sells the Stanley cups to consumers with the assurance that they can be used during activity (*i.e.*, hiking and climbing) where a consumer could drop and/or damage the Stanley cups. Yet PMI fails to provide any warning whatsoever that this comes with substantial risk of lead exposure.

23.     PMI had a duty to disclose its use of lead before enticing millions of customers to buy its Stanley cups.

24.     Lead is a carcinogen and developmental toxin. It is dangerous in even trace amounts.

25.     The U.S. Food and Drug Administration ("FDA") and World Health Organization ("WHO") have declared lead "dangerous to human health."[10]

26.     Lead is poisonous and "disturbs the functions of almost every organ in the human body[.]"[11]

27.     "No amount of lead is known to be safe," and its effects cannot be reversed or remediated.  The FDA, CDC, EPA, American Academy of Pediatrics ("AAP"), and WHO have all plainly stated that there is no safe level of lead.[12]

---

[10] *Staff Report: Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, U.S. House of Representatives Committee on Oversight and Reform, Subcommittee on Economic and Consumer Policy, Feb. 4, 2021 ("House Report") at 2, *available at* http://tinyurl.com/ytxswcar (last accessed Jan. 25, 2024).

[11] M Samuel Collin, et al, *Bioaccumulation of lead (Pb) and its effects on human: A review*, Journal of Hazardous Materials Advances (Aug. 2022).

[12] FDA, *Lead in Food and Foodwares*, available at https://www.fda.gov/food/environmental-contaminants-food/lead-food-and-foodwares (last accessed Feb. 12, 2024); CDC, *Health Effects of Lead Exposure*, available at https://www.cdc.gov/nceh/lead/prevention/health-effects.htm#:~:text=Exposure%20to%20lead%20can%20seriously,Learning%20and%20behavior%20problems (last accessed Feb. 12, 2024); *Biden-Harris Administration Proposes to Strengthen Lead Pain Standards to Protect Against Childhood Lead Exposure*, EPA, July 12, 2023, available at https://www.epa.gov/newsreleases/biden-harris-administration-proposes-

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

28.     "No safe level of exposure has been identified."[13] No amount of lead is known to be safe because "there is no known safe blood lead concentration."[14] Even exposure to very low levels of lead can "cause lower academic achievement, attention deficits and behavior problems,"[15] and, when exposure is consistent, has been "found to reduce the cognitive capacity of children."[16] "[P]rolonged intake of even [] low level[s] of lead is hazardous to human beings."[17] Lead has been conclusively found to have no positive physiological role in the body, "while its harmful effects are manifold."[18] The effects of lead have also been well studied at the cellular level, and "heavy metals, including lead, create reactive radicals which damage cell structures, including DNA and cell membrane."[19]

29.     The Centers for Disease Control and Prevention warned "[w]hen lead is used in manufacturing, there is a risk of lead exposure for consumers of those products, especially for products intended for use in food consumption, like drinkware."[20]

---

strengthen-lead-paint-standards-protect-against (last accessed Feb, 12, 2024); AAP, Lead Exposure in Children, available at https://www.aap.org/en/patient-care/lead-exposure/lead-exposure-in-children (last accessed Feb. 12, 2024); WHO, Lead Poisoning, supra n.14; *see also* USA Today, *FDA: Recalled Applesauce Pouches Had Elevated Lead Levels and Another Possible Contaminant* (Jan. 5, 2024), at https://www.usatoday.com/story/money/food/2024/01/05/applesauce-pouch-recall-contamination-spreads/72121869007 (last accessed Feb, 12, 2024).

[13] Healthy Babies Bright Futures' Report: *What's in My Baby's Food?*, available at https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (last accessed February 6, 2023).

[14] WHO Fact Steet, Lead Poisoning (hereinafter "WHO, Lead Poisoning"), available at https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health (last accessed Jan. 25, 2024).

[15] Healthy Babies Investigation Report, *supra* n.30 at 18.

[16] Needleman HL, et al., *The long-term effects of exposure to low doses of lead in childhood--An 11-year follow-up report*, N Engl. J Med. 1990; 322:83–88.

[17] Wani AL, et al., *Lead toxicity: a review*, Interdiscip. Toxicol. Vol. 8, No. 2, pp. 55-64 (June 2015) (hereinafter "*Lead toxicity: a review*").

[18] *Id*.

[19] Kosnett MJ. Lead. In: Olson K.R, ed. Poisoning and Drug Overdose. 5th ed. McGraw Hill Professional (2006).

[20] Daryl Austin, *Do Stanley cups contain lead or pose a risk of lead poisoning? Experts weigh in*, USA Today (Jan. 24, 2024).

---

CLASS ACTION COMPLAINT - 6

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

30.     According to Jenna Forsyth, Ph.D., a research scientist specializing in epidemiology and environmental science at Stanford University School of Medicine, "[m]ost people think of lead poisoning as a thing of the past, but lead is still all around us, often at dangerous enough levels to cause significant harm[.]"[21]

31.     Lead has a half-life of roughly 30 days in the blood, "after which it diffuses into soft tissues such as the kidneys, brain, and liver and then distributed to bones, teeth and hair as lead phosphate."[22]

32.     Prolonged exposure to lead accumulates in the body, leading to lead poisoning or toxicity.[23]

33.     Lead from foods builds up in the body over time. Lead build-up can and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental and reproductive disorders, as well as serious injuries to the nervous system and other organs and body systems.

34.     Lead accumulation is a major health concern. The consumption of lead contaminated food and water are *direct* sources of accumulation.

35.     Lead exposure in children is particularly dangerous. Even very low exposure levels to lead can "cause lower academic achievement, attention deficits and behavior problems" and in fact, "[n]o safe level of exposure has been identified."[24]

36.     Once lead exposure ceases, the amount of lead in the blood decreases gradually. However, lead is also stored in the bones and it "can take decades for lead stored in the bones to decrease."[25]

---

[21] *Id.*
[22] M Samuel Collin, et al, *Bioaccumulation of lead (Pb) and its effects on human: A review*, Journal of Hazardous Materials Advances (Aug. 2022)
[23] *Id.*
[24] Healthy Babies Bright Futures' Report: *What's in My Baby's Food?*, available at https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (last accessed February 6, 2023).
[25] *Health Effects of Lead Exposure*, https://www.cdc.gov/nceh/lead/prevention/health-effects.htm (last accessed Feb. 6, 2024).

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

37.     Lead exposure in adults can cause neuropathy, a nerve condition that can lead to pain, numbness, weakness or tingling in one or more parts of the body. Other effects include reduced sperm count and hypertension and, depending on the blood lead level, decreased renal function, increased blood pressure, and hypertension.[26]

38.     Jane Houlihan, a research director for Healthy Babies, Bright Futures, an alliance whose mission is to reduce babies' exposures to neurotoxic chemicals, opined "lead is so toxic you just can't take chances with it[.] If a company has to rely on their product remaining perfectly intact in order for it to be safe, that company has a basic material safety problem that they are passing on to their customers."[27]

39.     Lead is an "all-systems toxin" meaning "[t]here isn't a system in your body — from your nervous system to your immune system to your reproductive system — that isn't harmed by it." [28]

40.     According to the World Health Organization, "[t]here is no level of exposure to lead that is known to be without harmful effects."[29]

41.     PMI alleges that its use of lead to seal insulation is the "industry standard[30]" but provides no evidence to support that allegation. In fact, several other water bottle companies – including Hydro Flask, Owala, and Klean Kanteen, do not use lead in their manufacturing.[31]

42.     Plaintiff and the Class had a right to make an informed decision of whether to purchase a Stanley cup, but this right was taken away by Defendant's failure to warn purchasers

---

[26] *What Are Possible Health Effects from Lead Exposure?* (May 24, 2023), https://www.atsdr.cdc.gov/csem/leadtoxicity/physiological_effects.html.

[27] Madeline Holcombe and Sandee LaMotte, *Stanley and other drink cups contain lead. Should you be worried?*, CNN (Jan. 26, 2024).

[28] Daryl Austin, *Do Stanley cups contain lead or pose a risk of lead poisoning? Experts weigh in*, USA Today (Jan. 24, 2024).

[29] *Lead Poisoning* (Aug. 11, 2023), https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health (last accessed Feb. 6, 2024).

[30] *Do Stanley products contain lead?* Stanley 1913, https://support.stanley1913.com/en/support/solutions/articles/69000850923-do-stanley-products-contain-lead- (last visited Feb. 6, 2024).

[31] Daryl Austin, *Do Stanley cups contain lead or pose a risk of lead poisoning? Experts weigh in*, USA Today (Jan. 24, 2024).

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1     of the potential presence of lead.

2         43.     Based on Defendant's decision to wholly omit the presence of lead, and to instead

3 advertise, package, and market its Stanley cups as made with BPA-free 90% recycled 18/8

4 stainless steel, they had a duty to ensure that these statements were true and not misleading. As

5 such, Defendant knew or should have known the Stanley cups contained lead that could be exposed

6 to consumers.

7         44.     Defendant intentionally omitted the presence of lead in the Stanley cups to induce

8 and mislead reasonable consumers to purchase their Stanley cups.

9         45.     As a result of the material omissions, a reasonable consumer would have no reason

10 to suspect the presence of lead in the Stanley cups without conducting his or her own scientific

11 tests or reviewing third party scientific testing of these products.

12         46.     PMI has advertised its product for "adventures" such as "scaling a mountain" or

13 "climbing a tree." Yet, PMI knew that these activities could increase the risk of the Stanley cups

14 being damaged thereby exposing the seal and exposing consumers to the lead used in the seal.

15         47.     PMI markets its products as safe and durable. PMI's advertisements often show the

16 Stanley cups being used by individuals while exploring or exercising. In fact, the official Stanley

17 Brand Instagram Account displays a variety of photos depicturing consumers using Stanley cups

18 while participating in strenuous activities:

19              (a)     An individual holding a Stanley cup while skateboarding[32]:

20

21

22

23

24

25

26       [32] Stanley Brand (@stanley_brand), Instagram,
https://www.instagram.com/p/ChFdVIQJCBv/ (last visited Feb. 14, 2024).

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660



A)

(b)    An individual drinking from a Stanley cup while mountain climbing[33]:



B)

(c)    A screenshot of a video of two individuals holding Stanley cups while rollerblading[34]:

---

[33] Stanley Brand (@stanley_brand), Instagram, https://www.instagram.com/p/Caz8vgHBM4F/ (last visited Feb. 14, 2024).
[34] Stanley Brand (@stanley_brand), Instagram, https://www.instagram.com/p/CvX0fH4Jojh/ (last visited Feb. 14, 2024).

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1
2
3
4
5
6
7
8
9
10
11
12



C)

13   48.   Other Stanley cups are marketed specifically for children. The PMI website

14 describes some Stanley cups as "easy to carry from the playground to the classroom." The official

15 Stanley Brand Instagram Account displays photos of children using Stanley cups[35]:

16
17
18
19
20
21
22
23
24

25   [35] Stanley Brand (@stanley_brand), Instagram,
https://www.instagram.com/p/CiNmzSKsnQM/ (last visited Feb. 14, 2024); Stanley Brand
26 (@stanley_brand), Instagram, https://www.instagram.com/p/CrjEmcHu8vr/ (last visited Feb. 14,
2024)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660



D)

E)

49.     PMI markets and advertises its Stanley cups as safe and durable. Its advertisements show consumers using the Stanley cups while exercising, hiking, skateboarding, biking, among other high impact activities. Yet PMI knew, or should have known, that these products were manufactured with lead, which can be exposed if the product is altered during one of these

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

activities. PMI failed to notify consumers of this fact.

50.     Furthermore, other water bottle manufacturers have produced products that are free of lead.

51.     Hydro Flask, for example, created an alternative process over a decade ago for sealing bottles without the use of lead.[36]

52.     Similarly, Owala bottles "are lead free. Always Have Been. Always Will Be." Owala has used a lead-free process "from the very beginning[.]"[37]

53.     Klean Kanteen also manufactures and sells products that are free of lead. They use a different type of plug to create its vacuum insulated product.[38]

54.     Thus, there are many ways for manufacturers, like PMI, to significantly reduce or eliminate lead from their products.

55.     PMI intended that the warranties, advertising, labeling, statements, and representations would be considered by purchasers of the Stanley cups, including Plaintiff and the proposed Class.

56.     PMI directly marketed to Plaintiff and the proposed Class through statements on their website, labeling, advertising, and packaging.

57.     Plaintiff and the proposed Class are the intended beneficiaries of the expressed and implied warranties.

## CLASS ACTION ALLEGATIONS

58.     Plaintiff brings this action individually and on behalf of the following Class pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

---

[36] *Does Hydro Flask use lead for sealing its bottles and tumblers?*, Jan. 29, 2024, https://faq.hydroflask.com/en_us/does-hydro-flask-use-lead-for-sealing-bottles-and-tumblers-HkQrgJLq6 (last accessed Feb. 8, 2024).
[37] *Do Owala bottles/tumblers contain lead?,* https://owalalife.com/pages/faq , (last accessed Feb. 8, 2024).
[38] *Do Klean Kanteens have BPA, lead, phthalates or heavy metals?*, https://www.kleankanteen.com/pages/faq , (last accessed Feb. 8, 2024).

CLASS ACTION COMPLAINT - 13

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

All persons in the United States who, from February 14, 2019 to the present, purchased a Stanley cup for personal use, and not for resale (the "Class");

59.     Excluded from the Class are the Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

60.     This action is brought and may be properly maintained as a class action.  There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable. Purchasers of the Stanley cups can identify their purchases through receipts, store rewards programs, and their own testimony.

61.     The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Class members in a single action will provide substantial benefits to the parties and Court.

62.     Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

a.     whether PMI owed a duty of care to Plaintiff and the Class;

b.     whether PMI knew or should have known that the Stanley cups contained, or may contain, lead;

c.     whether PMI wrongfully represented and continues to represent that the Stanley cups are safe, durable, and suitable for household and outdoor use;

d.     whether PMI wrongfully represented and continues to represent that the manufacturing of the Stanley cups are subjected to rigorous standards, including following strict guidelines including but not limited to BPA/BPS, PFOS, and phthalate regulatory requirements;

e.     whether PMI wrongfully failed to disclose that the Stanley cups contained, or may contain, lead;

f.     whether PMI's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

CLASS ACTION COMPLAINT - 14

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1        g.     whether those representations are likely to deceive a reasonable consumer;

2        h.     whether a reasonable consumer would consider the presence of lead as a

3 material fact in purchasing a Stanley cup;

4        i.     whether PMI had knowledge that those representations were false,

5 deceptive, and misleading;

6        j.     whether PMI continues to disseminate those representations despite

7 knowledge that the representations are false, deceptive, and misleading;

8        k.     whether PMI's representations and descriptions on the labeling of the

9 Stanley cups are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

10        l.     whether PMI violated the laws of the State of California;

11        m.     whether PMI violated the laws of the State of Washington;

12        n.     whether PMI breached its express warranties;

13        o.     whether PMI breached its implied warranties;

14        p.     whether PMI engaged in unfair trade practices;

15        q.     whether PMI engaged in false advertising;

16        r.     whether PMI made negligent misrepresentations and/or omissions;

17        s.     whether PMI failed to warn adequately of the dangers of use of Stanley cups

18 that have been damaged, among other things;

19        t.     whether Plaintiff and the members of the Class are entitled to actual,

20 statutory, and punitive damages; and

21        u.     whether Plaintiff and members of the Class are entitled to declaratory and

22 injunctive relief.

23        63.     PMI engaged in a common course of conduct giving rise to the legal rights sought

24 to be enforced by Plaintiff individually and on behalf of the other members of the Class.  Identical

25 statutory violations and business practices and harms are involved.  Individual questions, if any,

26 are not prevalent in comparison to the numerous common questions that dominate this action.

CLASS ACTION COMPLAINT - 15

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

64.    Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to PMI's conduct.

65.    Plaintiff will fairly and adequately represent and protect the interests of the Class, have no interests incompatible with the interests of the Class, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

66.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

67.    Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

68.    As a result of the foregoing, class treatment is appropriate.

## CLAIMS FOR RELIEF

### COUNT I
### Breach of Express Warranty

69.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

70.    PMI marketed and sold the Stanley cups into the stream of commerce with the intent that the Stanley cups would be purchased by Plaintiff and the Class.

71.    PMI expressly warranted, advertised, and represented to Plaintiff and the Class that their Stanley cups are safe and durable.

72.    PMI made these express warranties regarding the Stanley cups' quality and fitness for use in writing through its website, advertisements, and marketing materials. These express warranties became part of the basis of the bargain that Plaintiff and the Class entered into upon purchasing the Stanley cups.

73.    PMI's advertisements, warranties, and representations were made in connection with the sale of the Stanley cups to Plaintiff and the Class. Plaintiff and the Class relied on PMI's

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

advertisements, warranties, and representations regarding the Stanley Cups in deciding whether to purchase PMI's products.

74. Defendant's Stanley cups do not conform to PMI's advertisements, warranties and representations in that they:

      a. Are not safe for consumption; and

      b. Contain, or may contain, lead.

75. PMI was on notice of this breach as they were aware of the included lead in the Stanley cups.

76. Privity exists because PMI expressly warranted to Plaintiff and the Class through the warranting, advertising, marketing, and labeling that the Stanley cups safe and suitable for use and by failing to make any mention of lead.

77. As a direct and proximate result of PMI's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Stanley cups that were worth less than the price they paid and they would not have purchased at all had they known of the presence of lead.

78. Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for PMI's failure to deliver goods conforming to their express warranties and resulting breach.

**COUNT II**
**Breach of Implied Warranty of Merchantability**

79. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

80. PMI is a merchant engaging in the sale of goods to Plaintiff and the Class.

81. There was a sale of goods from PMI to Plaintiff and the Class.

82. At all times mentioned herein, PMI manufactured or supplied the Stanley cups, and prior to the time the Stanley cups were purchased by Plaintiff and the Class, PMI impliedly warranted to them that the Stanley cups were of merchantable quality, fit for their ordinary use, and conformed

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

to the promises and affirmations of fact made on the website. Plaintiff and the Class relied on PMI's promises and affirmations of fact when they purchased the Stanley cups.

83.     The Stanley cups were not fit for their ordinary use, consumption by users, and did not conform to PMI's affirmations of fact and promises as they contained lead which does not conform to the packaging.

84.     The Stanley cups did not conform to PMI's affirmations of fact that they were safe and BPA free because they contained lead.

85.     PMI breached its implied warranties by selling Stanley cups that failed to conform to the promises or affirmations of fact made on the container or label as each product contained lead that do not conform to the packaging.

86.     PMI was on notice of this breach, as it was aware of the lead in the Stanley cups.

87.     Privity exists because PMI impliedly warranted to Plaintiff and the Class through the warranting, advertising, marketing, and labeling that the Stanley cups were high-quality and suitable for use by consumers, and by failing to make any mention of lead.

88.     As a direct and proximate result of PMI's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Stanley cups that are worth less than the price they paid and that they would not have purchased at all had they known of the presence of lead.

89.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for PMI's failure to deliver goods conforming to their implied warranties and resulting breach.

## COUNT III
### Fraud by Omission

90.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

91.     PMI concealed from and failed to disclose to Plaintiff and the Class that their Stanley cups contained lead that do not conform to the products' labels, packaging, advertising,

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  and statements.

2      92.    PMI was under a duty to disclose to Plaintiff and the Class the true quality,

3  characteristics, and suitability of the Stanley cups because: (1) PMI was in a superior position to

4  know the true state of facts about its products; (2) PMI was in a superior position to know the

5  actual characteristics and suitability of the Stanley cups for use by consumers; and (3) PMI knew

6  that Plaintiff and the Class could not reasonably have been expected to learn or discover that the

7  Stanley cups were misrepresented in the packaging, labels, advertising, and website prior to

8  purchasing the Stanley cups.

9      93.    The facts concealed or not disclosed by PMI to Plaintiff and the Class are material

10  in that a reasonable consumer would have considered them important when deciding whether to

11  purchase the Stanley cups.

12      94.    Plaintiff and the Class justifiably relied on PMI's omissions to their detriment. The

13  detriment is evident from the true quality and characteristics of the Stanley cups, which is inferior

14  when compared to how the Stanley cups are advertised and represented by PMI.

15      95.    As a direct and proximate result of PMI's conduct, Plaintiff and the Class have

16  suffered actual damages in that they purchased Stanley cups that were worth less than the price

17  they paid and that they would not have purchased at all had they known of the presence of lead

18  that do not conform to the products' labels, packaging, advertising, and statements.

19      96.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief,

20  attorneys' fees, costs, and any other just and proper relief available under the laws.

21  **COUNT IV**

22  **Negligent Misrepresentation**

23      97.    Plaintiff incorporates by reference and realleges each and every allegation

24  contained above, as though fully set forth herein.

25      98.    PMI had a duty to Plaintiff and the Class to exercise reasonable and ordinary care

26  in the formulation, testing, manufacture, marketing, distribution, and sale of the Stanley cups.

CLASS ACTION COMPLAINT - 19

99.     PMI breached its duty to Plaintiff and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiff and the Class that do not have the qualities, characteristics, and suitability for use as advertised by PMI and by failing to promptly remove the Stanley cups from the marketplace or to take other appropriate remedial action.

100.    PMI knew or should have known that the qualities and characteristics of the Stanley cups were not as advertised or suitable for their intended use, and were otherwise not as warranted and represented by PMI. Specifically, PMI knew or should have known that: (1) certain Stanley cups were not safe because they contained levels of lead; (2) the Stanley cups were not of superior quality because they contained lead that does not conform to the packaging; (3) the Stanley cups were adulterated, or at risk of being adulterated, by lead; and (4) the Stanley cups were otherwise not as warranted and represented by PMI.

101.    As a direct and proximate result of PMI conduct, Plaintiff and the Class have suffered actual damages in that they purchased Stanley cups that were worth less than the price they paid and that they would not have purchased at all had they known they contained lead or other materials that do not conform to the products' labels, packaging, advertising, and statements.

102.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

**COUNT V**
**Unjust Enrichment**

103.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

104.    Substantial benefits have been conferred on PMI by Plaintiff and the Class through the purchase of the Stanley cups. PMI knowingly and willingly accepted and enjoyed these benefits.

CLASS ACTION COMPLAINT - 20

105.   PMI either knew or should have known that the payments rendered by Plaintiff and the Class were given and received with the expectation that the Stanley cups would have the qualities, characteristics, and suitability for consumption represented and warranted by PMI. As such, it would be inequitable for PMI to retain the benefit of the payments under these circumstances.

106.   PMI's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for PMI to retain the benefits without payment of the value to Plaintiff and the Class.

107.   Plaintiff and the Class are entitled to recover from PMI all amounts wrongfully collected and improperly retained by PMI, plus interest thereon.

108.   Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT VI**
**Violation of California's False Advertising Law, California Business & Professions Code §§17500, *Et Seq*.**

109.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

110.   California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

111.   As set forth herein, PMI's claims that the Stanley cups are BPA-free, meet all US regulatory requirements, and are safe for use by consumers are literally false and likely to deceive the public.

112.   PMI's claims that the Stanley cups are BPA-free, meet all US regulatory requirements, and are safe for use by consumers are untrue or misleading, as is failing to make any disclose the presence of lead in the Stanley cups.

113.   PMI knew, or reasonably should have known, that all these claims were untrue or misleading.

CLASS ACTION COMPLAINT - 21

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

114. PMI's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase these products in the future if they can be assured that, so long as the Stanley cups are, as advertised, safe for use and do not contain lead.

115. Plaintiff and members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Stanley cups.

**COUNT VII**
**Violation of the Unfair Competition Law, California Business**
**& Professions Code §§17200, Et Seq.**

116. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

117. The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

**Fraudulent**

118. PMI's statements that the Stanley cups are BPA-free, meet all US regulatory requirements, and are safe for use by consumers are literally false and likely to deceive the public, as is PMI's failing to make any mention of the presence of lead in the Stanley cups.

**Unlawful**

119. As alleged herein, PMI has advertised the Stanley cups with false or misleading claims, such that Defendant's actions as alleged herein violate at least the following laws:

(a) The False Advertising Law, California Business & Professions Code sections 17500, *et seq*.

**Unfair**

120. PMI's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Stanley cups is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

121.    Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Stanley cups is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law.

122.    PMI's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Stanley cups is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one consumers, themselves, can reasonably avoid.

123.    In accordance with California Business & Professions Code section 17203, Plaintiff and the Class seek an order enjoining PMI from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.  Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

124.    On behalf of themselves and the Class, Plaintiff also seeks an order for the restitution of all monies from the sale the Stanley cups, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

### COUNT IX
### Violation of the California's Consumers Legal Remedies Act,
### California Civil Code §§1750, et seq.

125.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

126.    Plaintiff and each Class member is a "consumer," as that term is defined in California Civil Code section 1761(d).

127.    The Stanley cups are "goods," as that term is defined in California Civil Code section 1761(a).

128.    PMI is a "person" as that term is defined in California Civil Code section 1761(c).

129.    Plaintiff and each proposed Class member's purchase of Defendant's products constituted a "transaction," as that term is defined in California Civil Code section 1761(e).

CLASS ACTION COMPLAINT - 23

1    130.    PMI's conduct alleged herein violated the following provisions of California's

2    Consumer Legal Remedies Act (the "CLRA"):

3         (a)    California Civil Code section 1770(a)(5), by negligently, recklessly, and/or

4    failing to disclose the presence of lead.

5         (b)    California Civil Code section 1770(a)(5), by negligently, recklessly, and/or

6    intentionally representing that the Stanley cups are safe for use, and by failing to make any mention

7    of lead in the Contaminated Stanley cups;

8         (c)    California Civil Code section 1770(a)(7), by negligently, recklessly, and/or

9    intentionally representing that the Stanley cups were of a particular standard, quality, or grade,

10   when they were of another;

11        (d)    California Civil Code section 1770(a)(9), by negligently, recklessly, and/or

12   intentionally advertising the Stanley cups with intent not to sell them as advertised; and

13        (e)    California Civil Code section 1770(a)(16), by representing that the Stanley

14   cups have been supplied in accordance with previous representations when they have not.

15   131.    PMI's failure to notify Plaintiff of the presence of lead was material as reasonable

16   consumers such as Plaintiff would deem that the Stanley cups were manufactured without proper

17   quality control procedures and contained lead important in determining whether to purchase the

18   Stanley cups.

19   132.    As a direct and proximate result of these violations, Plaintiff and the Class have

20   been harmed, and that harm will continue unless PMI is enjoined from using the misleading

21   marketing described herein in any manner in connection with the advertising and sale of the

22   Stanley cups.

23   133.    Plaintiff seeks an award of attorneys' fees pursuant to, *inter alia*, California Civil

24   Code section 1780(e) and California Code of Civil Procedure section 1021.5.

25

26

CLASS ACTION COMPLAINT - 24

1
2

**COUNT X**
**Violation of the Washington Consumer Protection Act**
**REV. CODE WASH. ANN. §§ _19.86.010, ET SEQ**

3
4

134.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

5
6

135.    Defendant, Plaintiff, and the members of the Washington Subclass all are persons within the meaning of the Washington Consumer Protection Act.

7
8

136.    At all relevant times, Defendant engaged in trade and commerce within the meaning of the Washington Consumer Protection Act.

9
10

137.    The Washington Act makes unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. § 19.86.020.

11
12
13

138.    As alleged in this Complaint, Defendant's actions constitute unfair and deceptive acts and practices in the conduct of any trade or commerce in violation of the Washington Act. Defendant violated the Act by, among other things:

14
15

a.      Representing that the Stanley cups have characteristics or benefits that they do not have;

16
17

b.      Representing that the Stanley cups are of a particular standard, quality and grade when they are not; and

18
19
20

c.      Failing to disclose material information concerning the Stanley cups known to Defendant at the time of advertisement or sale, with the intention of inducing Plaintiff and members of the Washington Subclass to purchase the Stanley cups.

21
22
23
24

139.    Defendant intended that its unfair and deceptive acts and practices would take advantage of Plaintiff and the members of the Washington Subclass by persuading them to purchase Stanley cups that would not perform as intended and don't provide the advertised benefits.

25
26

140.    The foregoing deceptive trade practices proximately caused Plaintiff and the members of the Washington Subclass to suffer an ascertainable loss in the form of, among other

CLASS ACTION COMPLAINT - 25

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

things, overpayment of the Stanley cups that did not deliver the promised benefits.

141.     Moreover, Defendant's unfair and deceptive acts and practices are injurious to the public interest because the acts and practices have the capacity to injure other persons, had the capacity to injure other persons during the Class Period, and did injure other persons during the Class Period.

142.     Plaintiff seeks to recover for the members of the Washington Subclass the overcharges they incurred as a result of Defendant's deceptive practices, as well as treble damages and any other legal or equitable relief that the Court deems just and appropriate.

## COUNT XI
### Manufacturing Defect
### Washington Product Liability Act

143.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

144.     At all times mentioned herein, Defendant designed, manufactured, tested, marketed, sold, and distributed the Stanley cups used by Plaintiff.

145.     At all relevant times, the Stanley cups used by Plaintiff were expected to and did reach Plaintiff without a substantial change in their anticipated or expected condition as manufactured, handled, distributed, and sold by Defendant.

146.     At all relevant times, the Stanley cups used by Plaintiff were shipped and stored in compliance with Defendant's express written instructions.

147.     At all relevant times, the Stanley cups used by Plaintiff were used in a manner that was foreseeable and intended by Defendant.

148.     The Stanley cups used by Plaintiff were not reasonably safe for their intended use and were defective with respect to their manufacture, as described herein, in that the design and manufacture posed an unreasonable risk of harm to Plaintiff.

149.     Defendant's Stanley cups are inherently dangerous and defective, unfit, and unsafe for their intended and reasonably foreseeable uses, and accordingly do not meet or perform to the

CLASS ACTION COMPLAINT - 26

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1 expectations of ordinary consumers.

2   150.   The Stanley cups create risks to the health and safety of consumers that far outweigh

3 the cost to Defendant to utilize a lead free seal.

4   151.   Defendant's manufacturing defect includes, but is not limited to failure to utilize a

5 lead free plug to create its vacuum-insulated vessels.

6   152.   Accordingly, the Stanley cups deviated in a material way from the performance

7 standards of the Defendant and/or deviated in some material way from otherwise identical units of

8 the same product line.

9   153.   The manufacturing defects in Defendant's Stanley cups were substantial factors in

10 causing Plaintiff's injuries.

11   154.   As a direct and proximate result of Defendant's conduct described herein, Plaintiff

12 has been injured because she purchased a defective product she otherwise would not have

13 purchased, did not receive the benefit of the bargain, and/or suffered out-of-pocket loss.

14   155.   Accordingly, Plaintiff would not have: (a) been subjected to the risk of exposure to

15 lead; and (b) sustained a significantly increased risk of developing various types of serious ailments.

16   156.   As a direct and proximate result of Defendant's actions and omissions, Plaintiff have a

17 significantly increased risk of developing serious ailments, and have suffered economic losses.

18 ## **<u>PRAYER FOR RELIEF</u>**

19   WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays

20 for judgment against PMI as to each and every count, including:

21   A.   An order declaring this action to be a proper class action, appointing Plaintiff and

22 their counsel to represent the Class, and requiring PMI to bear the costs of class notice;

23   B.   An order enjoining PMI from selling the Stanley cups until the levels lead are

24 removed or full disclosure of the presence of such appears on all labels, packaging, and advertising;

25   C.   An order enjoining PMI from selling the Stanley cups in any manner suggesting or

26 implying that they are safe for use;

CLASS ACTION COMPLAINT - 27

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

D.      An order requiring PMI to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing products;

E.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining PMI from continuing the unlawful practices alleged herein, and injunctive relief to remedy PMI's past conduct;

F.      An order requiring PMI to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon;

G.      An order requiring PMI to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.      An order requiring PMI to pay all actual and statutory damages permitted under the counts alleged herein;

I.      An order requiring PMI to pay punitive damages on any count so allowable;

J.      An order awarding attorney's fees and costs, including the costs of pre-suit investigation, to Plaintiff and the Class; and

K.      An order providing for all other such equitable relief as may be just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated:  February 14, 2024                              Respectfully submitted,

                                                                          /s/Brendan W. Donckers
                                                                          Brendan W. Donckers
                                                                          BRESKIN JOHNSON TOWNSEND PLLC
                                                                          1000 Second Avenue, Suite 3670
                                                                          Seattle, WA 98104
                                                                          Telephone: (206) 652-8660
                                                                          Facsimile: (206) 652-8290
                                                                          bdonckers@bjtlegal.com


CLASS ACTION COMPLAINT - 28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Daniel E. Gustafson
David A. Goodwin
Mary M. Nikolai
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com
mnikolai@gustafsongluek.com

Rebecca A. Peterson
Robert K. Shelquist
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile:  (612) 339-0981
rapeterson@locklaw.com
rkshelquist@locklaw.com

*Attorneys for Plaintiff*